**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| DANIEL COSTA, individually and on behalf of all others similarly situated,  :  :  Plaintiff,  :  :  v.  :  :  CLEAR LINK INSURANCE AGENCY, LLC, and X-TELECOM  :  :  Defendants.  : | Civil File No. 3:23-cv-5874-SAL  **FIRST AMENDED COMPLAINT – CLASS ACTION** |

**Preliminary Statement**

1.  Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

2.  "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive

telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

3. The Plaintiff Daniel Costa alleges that Clear Link Insurance Agency, LLC ("Clear Link") commissioned telemarketing vendors, including X-Telecom ("X-Telecom"), to place telemarketing calls to Mr. Costa and other putative class members despite not having the requisite consent to contact those individuals who, like the Plaintiff, were listed on the National Do Not Call Registry.

4. The Plaintiff also brings this putative class action pursuant to the South Carolina Telephone Privacy Protection Act ("SCTPPA"), S.C. Code § 37-21-10, *et seq.*, alleging that X-Telecom made telemarketing calls to a number listed on the National Do Not Call Registry, which violates the SCTPPA in addition to the TCPA.

5. Because telemarketing calls typically use technology capable of generating thousands of similar calls per day, the Plaintiff sues on behalf of a proposed nationwide class of other persons who received similar calls.

6. A class action is the best means of obtaining redress for the Defendants' illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

7. Plaintiff Daniel Costa is an individual residing in this District.

8. Defendant Clearlink Insurance, LLC is a limited liability company that offers insurance in this District, just as it did with the Plaintiff.

9. Defendant X-Telecom is a California company that makes telemarketing calls into this District.

## Jurisdiction & Venue

10. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

11. The Court has personal jurisdiction over Defendants because they made calls into this District, authorized calls into this District or offered insurance services based on calls into this District.

12. Venue is proper under 28 U.S.C. § 1391(b) because the calls at issue were made into this District.

## TCPA Background

13. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

14. The National Do Not Call Registry (the "Registry") allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

15. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

16. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provide a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

## SCTPPA Background

17. On May 18, 2018, the State of South Carolina signed into law the South Carolina Telephone Privacy Protection Act, S.C. Code § 37-21-10, *et seq*.

18. The SCTPPA prohibits, *inter alia,* a party from initiating, or causing to initiate, a telephone solicitation to a South Carolina telephone number that has been listed on the National Do Not Call Registry. *See* S.C. Code § 37-21-70.

19. The SCTPPA allows for aggrieved individuals to initiate an action and recover

$1,000 for each negligent violation and $5,000 for each willful violation of the SCTPPA as well as attorneys' fees and costs. S.C. Code § 37-21-80.

## Factual Allegations

20. Clearlink offers medicare insurance services.

21. To generate leads, Clearlink makes and/or contracts with a telemarketing firm, to make telemarketing calls to consumers who have never had a relationship and who have never consented to receive their calls.

22. This includes, but is not limited to, X-Telecom.

23. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

24. Plaintiff's telephone number (the "Number"), (803)-821-XXXX, is on the National Do Not Call Registry since at least February 13, 2016.

25. Despite this, X-Telecom placed telemarketing calls to Mr. Costa on at least October 30 and November 1, 2023.

26. All of the calls that were answered followed a similar script.

27. The telemarketer would ask if the Plaintiff about Medicare.

28. To prepare him to be transferred directly to Clearlink, the telemarketer would ask Mr. Costa what his age was and zip code.

29. On the November 1, 2023 call, the Plaintiff was transferred to a Zack Ace Navaris from Clear Link.

30. Mr. Navaris promoted the supplemental Medicare insurance services offered by Clear Link.

31. Mr. Navaris claimed that with a payment to Clear Link, Mr. Costa will receive these benefits of supplemental Medicare Insurance.

32. Plaintiff's privacy has been violated by the above-described telemarketing calls.

33. The Plaintiff never provided his consent or requested these calls.

34. Indeed, X-Telecom contacted the Plaintiff prior to this filing and did not deny that it called him.

35. Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendants because their privacy has been violated, they were annoyed and harassed. In addition, the calls occupied their telephone lines, rendering them unavailable for legitimate communication.

## **CLEAR LINK'S VICARIOUS LIABILITY**

36. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

37. In 2008, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.

38. The FCC has instructed that sellers such as Clear Link may not avoid liability by outsourcing telemarketing to third parties, such as X-Telecom:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for

6

> telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnotes and alteration marks omitted).

39. In 2013, the FCC held that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *Id.* at 6574 ¶ 1.

40. Clear Link is liable for telemarketing calls placed by X-Telecom to carry out calling for Clear Link to generate customers for Clear Link.

41. Clear Link authorized X-Telecom to send telemarketing calls and transfer the call recipient directly to Clear Link.

42. Clear Link controls the day-to-day activities of X-Telecom telemarketing for Clear Link.

43. Clear Link restricts the geographic footprint into which its telemarketing vendors, including X-Telecom, can cause calls to be made.

44.     Clear Link provided the specific criteria for the leads it would accept and required its vendors, including X-Telecom, to adhere to those criteria.

45.     Indeed, Clear Link has previously received complaints of telemarketing conduct by their vendors.

46.     The 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *In re DISH Network*, 28 FCC Rcd. 6592-93 ¶ 46.  Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

### Class Action Allegations

47.     As authorized by Rule 23(b)(2) or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

48.     The class of persons Plaintiff proposes to represent is tentatively defined as:

**National Do Not Call Registry Class**: All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing calls from or on behalf of the Defendants (3) within a 12-month period, (4) from four years prior the filing of the Complaint.

**SCTPPA Class**

All persons with a South Carolina area code to whom (1) at any time from May 18, 2018 until trial, (2) Defendants, or someone on their behalf, (3) placed at least one call, (4)

where it called a number on the National Do Not Call Registry, (5) while promoting their services.

This is referred to as the "Class".

49. Excluded from the Class are counsel, the Defendants, and any entities in which the Defendant have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

50. The Class as defined above are identifiable through phone records and phone number databases.

51. The potential members of the Class number at least in the thousands.

52. Individual joinder of these persons is impracticable.

53. The Plaintiff is a member of the Class.

54. There are questions of law and fact common to Plaintiff and to the proposed Class, including but not limited to the following:

    (a) whether Clear Link is vicariously liable for DMS's conduct;

    (b) whether Defendants systematically made multiple telephone calls to members of the National Do Not Call Registry Class;

    (c) whether Defendants made calls to Plaintiff and members of the Classes without first obtaining prior express written consent to make the calls;

    (d) whether Defendants' conduct constitutes a violation of the TCPA;

    (e) whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct.

55. Plaintiff's claims are typical of the claims of members of the Class.

56. Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class, he will fairly and adequately protect the interests of the

9

Class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

57. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents.

58. The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

## FIRST CAUSE OF ACTION

### Telephone Consumer Protection Act
### (Violations of 47 U.S.C. § 227)
### (On Behalf of Plaintiff and the National Do Not Call Registry Class)

59. Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

60. The foregoing acts and omissions of Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency purposes, to the Plaintiff and the Class despite their numbers being on the National Do Not Call Registry.

61. The Defendants' violations were negligent, willful, or knowing.

62. As a result of Defendants' and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of between $500 and $1,500 in damages for each and every call made.

63. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making telemarketing calls to numbers on the National Do Not Call Registry, except for emergency purposes, in the future.

## SECOND CAUSE OF ACTION
### (Violation of SC Telephone Privacy Protection Act)

64. The above allegations are repeated and realleged herein as if set forth herein.

65. Defendants violated the SC Telephone Privacy Protection Act by contacting class members' South Carolina numbers that were listed on National Do Not Call Registry, or by the fact that others did so on their behalf.

66. The Plaintiff, on behalf of the class, also seeks an injunction, which the SC Telephone Privacy Protection Act explicitly permits, preventing the Defendants from calling a South Carolina number on the National Do Not Call Registry, or from anyone doing so on their behalf.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A. Certification of the proposed Class;

B. Appointment of Plaintiff as a representative of the Class;

11

C. Appointment of the undersigned counsel as counsel for the Class;

D. Statutory damages for the Class under the TCPA and SCTPPA;

E. A declaration that Defendants and/or their affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA and SCTPPA; and

F. Orders granting such other and further relief as the Court deems necessary, just, and proper.

## JURY DEMAND

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

DAVE MAXFIELD, ATTORNEY, LLC

s/ Dave Maxfield_____

Dave Maxfield, Esq. Fed ID 6293
PO Box 11865
Columbia, SC 29211-1865
(803) 509-6800
dave@consumerlawsc.com
Attorney for Plaintiff

DATED: November 15, 2023